UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PROMETHEUS LABORATORIES, INC., | Civil Action No. 11-230 (KM) |
| Plaintiff, | Civil Action No. 11-1241 (KM) |
| v. | **CLERK'S OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT ROXANE'S MOTION TO TAX COSTS** |
| ROXANE LABORATORIES, INC. and CIPLA LTD., | |
| Defendants. | |

This matter has come before the Clerk on the motion [Dkt. Entry 430][1] of Defendant Roxane Laboratories, Inc. ("Roxane") to tax costs against Plaintiff Prometheus Laboratories, Inc. ("Plaintiff," "Prometheus") pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.   Plaintiff opposes this motion.

This Hatch-Waxman litigation involves two cases, Civil Action Nos. 11-230 and 11-1241, two defendants, Roxane and Cipla, Ltd.("Cipla") (collectively, "Defendants"), and two patents.

Plaintiff's United States Patent No. 6,284,770 ("the '770 patent") claims a method of treating irritable bowel syndrome by using alosetron hydrochloride, the active ingredient in Lotronex, marketed by Plaintiff.   This patent, issued in 2001, was reexamined in 2010.   The alosetron hydrochloride in Plaintiff's Lotronex is manufactured by the process claimed in Plaintiff's United States Patent No. 6,175,014 ("the '014 patent").

---

[1]        Unless otherwise noted, references herein are to docket entries in Civil Action No. 11-1241.

This litigation was prompted by Roxane's filing of an Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration ("FDA") for approval to market alosetron hydrochloride tablets, i.e., generic versions of Plaintiff's Lotronex products, prior to the expiration of the '770 patent.   The second defendant, Cipla manufactures and sells the alosetron hydrochloride that will be used in Roxane's ANDA products, should they be approved by the FDA.

A very simplified version of these proceedings is given herein, omitting references to an additional named defendant, Byron, dismissed along the way.   The parties are well-aware of the missing details, not pertinent to the Clerk's decision.   In a nutshell, Plaintiff alleged in its complaints that Roxane's submission of its ANDA to the FDA prior to the expiration of the '770 patent constituted infringement thereof and that Cipla's process for manufacturing its alosetron hydrochloride infringed the '014 patent. [Dkt. Entries 1, 67]; [Dkt. Entry 1 in Civ. No. 11-230]. Defendants responded with defenses and counterclaims of non-infringement and invalidity of the patents in suit.   [Dkt. Entries 72, 175]; [Dkt. Entry 9 in Civ. No. 11-230].

This litigation commenced when Plaintiff filed Civil Action No. 11-230 against Roxane on January 14, 2011.   Plaintiff's second complaint, Civil Action No. 11-1241, naming Roxane and Cipla, was filed on March 4, 2011, and the two cases were consolidated for pretrial purposes on June 3, 2011, as memorialized in the Court's July 28, 2011 order [Dkt. Entry 29].    The Markman hearing was held on October 17, 2012 [Dkt. Entry 209] and the Court's claims construction opinion and order [Dkt. Entries 332, 333] were issued on September 23, 2013.   In the interim, Daubert motions were decided as well. [Dkt. Entry 335]; [Dkt. Entry 222 in Civ. No. 11-230].

A hearing on November 21, 2013, addressing cross-motions for summary judgments, resulted in the Court's finding of no invalidity of the '770 patent.   [Dkt. Entries 359, 360]. During the hearing, the parties resolved their dispute regarding the '014 patent, which was then removed from the litigation, as evidenced by the order and stipulation of dismissal without prejudice, later entered on May 29, 2014.   [Dkt. Entry 421].

A bench trial on the issues of the validity and infringement of the '770 patent was held over four days, from February 10 – 20, 2014 [Dkt. Entries 386, 393, 395, 397], with closings delivered on April 16, 2014 [Dkt. Entry 410].   The parties followed up the trial with proposed findings of fact and conclusions of law [Dkt. Entries 400, 402] and post-trial motions [Dkt. Entries 398, 401], which were denied in the Court's bench opinion or Findings of Fact and Conclusions of Law of May 21, 2014 [Dkt. Entry 415].

The final judgment order reflecting the Court's opinion was entered on June 3, 2014. [Dkt. Entry 424].   The Court held in favor of Defendants and against Plaintiff in determining that the '770 patent was invalid.   That order extended the deadline for the filing of motions for costs until 30 days after the final disposition of Plaintiff's appeal to the Court of Appeals for the Federal Circuit [Dkt. Entry 425].

The Federal Circuit affirmed this Court on November 10, 2015 [Dkt. Entry 428] and issued its mandate on December 17, 2015 [Dkt. Entry 429].   The mandate provides for the taxation of appellate costs against Plaintiff/appellant in the amount of $550.40.

Within 30 days thereof, on January 16, 2016, Roxane filed the motion to tax costs here at issue.   [Dkt. Entry 430].   It seeks therein the fees of:   deposition transcripts ($33,241.08); hearing transcripts ($11,082.55); witnesses ($5,684.48); hyperlinking ($1,392.00); demonstratives

($23,977.00); copies and electronic discovery ($26,034.45); and appellate costs ($550.40); or a total of $101,961.96.

In response, Plaintiff argues that the costs of transcripts and copies should be taxed in a reduced amount and those of hyperlinking and demonstratives should be denied entirely, but does not object to the requested witness fees or appellate costs.   In sum, Prometheus contends that costs should be reduced by $56,672.75 and taxed in Roxane's favor in the amount of only $45,289.21. Pl.'s Br. [Dkt. Entry 433].

## I.   <u>Legal Standards</u>

Roxane's motion is made pursuant to Fed. R. Civ. P. 54(d) (1), which provides in relevant part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."   In a patent case, the definition of "prevailing party" is governed by Federal Circuit law.   <u>Manildra Milling Corp. v. Ogilvie Mills, Inc.</u>, 76 F.3d 1178, 1181-82 (Fed. Cir. 1996).   To be a prevailing party, a party must obtain relief on the merits of its claim that materially alters the legal relationship between the parties by modifying its opponent's behavior in a way that directly benefits that party.   <u>Id.</u> at 1182 (citing <u>Farrar v. Hobby</u>, 506 U.S. 103, 111-113 (1992)).

While the threshold issue of deciding prevailing party status is a matter of Federal Circuit law, the second inquiry, that of whether and how much to award, is a matter of regional circuit law.   <u>Id.</u> at 1183.   Therefore, the decisions of whether to award certain types of costs to the prevailing party and the amounts to be awarded are governed by Third Circuit law here.

In this Circuit, there is such a strong presumption that costs should be awarded to the prevailing party that, " '[o]nly if the losing party can introduce evidence, and the district court

can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.' "   Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli RR Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)).   The rationale behind this presumption is that the denial of costs is tantamount to a penalty.   Id. at 288-89 (citing ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662, 665 (3d Cir 1975)).

Despite this strong presumption, the types of costs that may be granted under Rule 54(d) are limited to those set forth in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained
>      for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials
>      where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and
>      salaries, fees, expenses, and costs of special interpretation services under
>      section 1828 of this title.

Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987).

The Supreme Court reinforced its Crawford Fitting holding in Taniguchi v. Kan Pacific Saipan, Ltd., 132 S.Ct. 1997 (2012), wherein it limited the "compensation of interpreters" in § 1920 (6) to the cost of oral translation.   The Court noted that its denial of the cost of document translation was "in keeping with the narrow scope of taxable costs." Id. at 2006.

In addition to Rule 54(d) and 28 U.S.C. § 1920, Defendant's motion is governed by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920.   Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2016 ed.) at 261.

Therefore, while a prevailing party is entitled to costs under Rule 54(d), "those costs often fall well short of the party's actual litigation expenses."   In re Paoli, 221 F.3d at 458. Furthermore, despite the presumption of granting costs to a prevailing party, that party must provide sufficient information to carry its burden of showing that the costs sought fall within the limits of § 1920.   Romero v. CSX Transp., Inc., 270 F.R.D. 199, 201-202 (D.N.J. 2010).

Unquestionably, Defendants are the prevailing parties in this matter and Plaintiff does not contend otherwise.   The Court's ruling that the '770 patent is invalid materially altered the legal relationship of the parties in a way that directly benefitted Defendants.   Further, Prometheus raises no technical deficiencies of this application and the Clerk finds none.   Roxane has complied with the procedural requirements of L. Civ. R. 54.1 and 28 U.S.C. § 1924 by timely filing and serving its notice of motion [Dkt. Entry 430] and Bill of Costs [Dkt. Entry 430-2], verified by its counsel, Timothy J. Doyle, Esq., and setting forth the nature of the costs sought. L. Civ. R. 54.1(a), (b).   Also, as required under L. Civ. R. 54.1(b), copies of supporting invoices have been appended as exhibits to the separate Declaration of Timothy J. Doyle, Esq. ("Doyle Decl.") [Dkt. Entry 430-3].   Therefore, the Clerk will now examine the specific costs of which Roxane seeks taxation, in the order in which they appear in § 1920.

## II.   Fees for Printed Transcripts, § 1920 (2)

Under § 1920 (2), Roxane seeks the costs of trial ($8,951.97), hearing ($2,130.58) and deposition ($33,241.08) transcripts in the total amount of $44,323.63.   Prometheus asserts several reasons for taxing transcript costs in a reduced amount:   the costs are based upon evidence that is not readily understood; the transcripts were not necessary; and the requested amounts incorporate the cost of non-taxable services which merely served the convenience of counsel.

6

*Trial Transcripts*

Roxane seeks the cost of the transcripts of the four day bench trial ($8,853.87) plus closing

arguments ($98.10) or a total of $8,951.97.   The requested costs, split 50/50 with Plaintiff for the

four days of trial transcripts, include "[o]ne realtime feed; a rough pdf several hours after the trial,

a hard copy of the transcript the following day, along with a pdf email of the final transcript, and a

miniscript transcript and word concordance."   Doyle Decl., Ex. 1 at 3.

Our pertinent local rule, L. Civ. R. 54.1(g) (6) provides in full:

> The cost of a reporter's transcript is allowable only (A) when specifically
> requested by the Judge, master, or examiner, or (B) when it is of a statement
> by the Judge to be reduced to a formal order, or (C) if required for the record
> on appeal. Mere acceptance by the Court of a submitted transcript does not
> constitute a request.   Copies of transcripts for an attorney's own use are not
> taxable in the absence of a prior order of the Court.   All other transcripts of
> hearings, pretrials and trials will be considered by the Clerk to be for the
> convenience of the attorney and not taxable as costs.

The controlling provision of § 1920, subsection (2), renders taxable the fees for printed

transcripts which are "necessarily obtained for use in the case."   The question, then, is whether

these transcripts were necessarily obtained, e.g., for one of the purposes set forth in our local rule,

or rather, whether they merely served the convenience of defense counsel.

Roxane explains the need of the transcripts as follows:

> Trial transcripts were used to annotate the Proposed Findings of Fact and Conclusions
> of Law with citations to the transcripts, as requested by the Court.   Daily transcripts
> were necessary to prepare witnesses for examination.   Realtime feed was necessary to
> ensure that the record was clear and accurate.   Trial transcripts and the Closing Argument
> Transcript were also used for the appeal.

[Dkt. Entry 430-2 at 5].

The Clerk finds that the daily transcripts were necessary, for the reasons cited by Roxane

above, and per his usual practice, allows the cost of the original plus one copy.   However,

7

Roxane has not sufficiently justified the need for realtime service, charged at $3.05/page, which was a convenience, in the Clerk's eyes.   Roxane has provided no specific reason for expecting the printed transcript to be unclear or inaccurate.   Mylan Inc. v. SmithKline Beecham Corp., Civ. No. 10-4809, 2015 WL 1931139, at *7 (D.N.J. Apr. 28, 2015) (allowing the cost of hourly trial transcripts but not realtime services and stating, in connection with costs of deposition transcripts, "[a]bsent a showing of necessity, not made here, the costs of expedited service, litigation support services (such as realtime, rough ASCII, condensed transcript, e-transcript), shipping and handling, and exhibits are routinely denied.").

Plaintiff maintains that the supporting invoices are not "readily understood," as required under L. Civ. R. 54.1(b), and include the cost of the litigation support services noted above. The Clerk agrees that the invoice for the four day trial transcripts is confusing as it is unclear how the 50% amount, or $8,853.87, based upon the rate of $9.175/page for 965 pages, was derived. As Prometheus argues, the rate of $9.175/page most likely incorporates non-taxable costs, such as for rough pdf, miniscript and word concordance.   Also unclear is whether Roxane is requesting the cost of four additional copies or 3,860 pages at the rate of $.90/page.   Doyle Decl., Ex. 1 at 4.

Nevertheless, the costs of the original and the first copy of the four day trial transcripts are readily understood from the invoice.   The 965 pages were charged at the rates of $6.05/page for the original ($5,838.25) and $1.20/page for the first copy ($1,158.00).   Splitting this total of $6,996.25 evenly with Plaintiff, the Clerk taxes $3,498.13.   Added to this is the $98.10 cost of the first copy of the 109 page transcript of closing arguments, charged at the rate of $.90/page. Doyle Decl., Ex. 1 at 5.   Roxane appears to have paid this cost in full, without splitting it with Plaintiff. Therefore, trial transcripts are taxed in the amount of **$3,596.23** ($3,498.13 + $98.10).

### *Hearing Transcripts*

The $2,130.58 cost of hearing transcripts requested by Roxane arises out of the Markman hearing, the final pretrial conference, the summary judgment hearing and ten opinions recorded solely on the record by the Magistrate Judge.   [Dkt. Entry 430-2 at 5].   In opposing this cost, Plaintiff cites Roxane's failure to fulfill the requirements of L. Civ. R. 54.1(g) (6) and asserts that these transcripts merely served defense counsel's own convenience.   Pl.'s Br. at 3-4.

*Markman Hearing* – Roxane explains that "[t]he *Markman* hearing transcript was necessary to fully understand the Court's claim construction ruling, to identify portions for redaction from the public record, and to answer questions posed by the Court." [Dkt. Entry 430-2 at 5].

The Clerk has verified the necessity of this transcript, as outlined by Roxane.   The Court reserved decision after the hearing, and as follow up to the hearing, Plaintiff's own counsel wrote to the Court, "[o]n the record at the claim construction hearing, Your Honor requested that the parties address the following topics: . . ." [Dkt. Entry 227].   A few days later, defense counsel responded in their letter to the Court, "[t]o precisely respond to your Honor's questions [raised during the October 17, 2012 claim construction hearing], Defendants ordered a copy of the claim construction hearing transcript and intended to review the transcript before responding."   [Dkt. Entry 230].   Therefore, the transcript was essentially requested by the Court and its necessity has been shown.

Also, defense counsel needed the transcript to support Roxane's motion to seal portions thereof.   [Dkt. Entry 412].

*Final Pretrial Conference* – Roxane justifies the need for the transcript of this January 25, 2013 hearing [Dkt. Entry 277] as follows:   "[t]he pretrial conference transcript was necessary to make sure that the trial ran smoothly and to ensure that the parties complied with the Court's orders at that pretrial conference."   [Dkt. Entry 430-2 at 5].

The Court's order subsequent to the hearing [Dkt. Entry 276] indicated that "for the reasons set forth on the record on January 25, 2013," "the rulings made during the Final Pretrial Conference will be memorialized in the Final Pretrial Order."   Roxane did, in fact, use the transcript to comply with the rulings made during the conference.   For example, in her April 20, 2013 letter to the Court [Dkt. Entry 296], defense counsel cited to the hearing transcript to justify her request to modify deadlines so as to be consistent with the Court's rulings during the hearing. Roxane has shown the need for this transcript.

*Summary Judgment Hearing* – Roxane states that the transcript of this November 21, 2013 hearing [Dkt. Entry 309 in Civ. No. 11-230] "was necessary to fully understand the Court's reasoning regarding potential dispositive issues in the case."   [Dkt. Entry 430-2 at 5].

Aside from Roxane's proposed justification, the Clerk views this transcript as necessary because it was submitted with defense counsel's motion to seal portions of that transcript.   [Dkt. Entry 413].

*Ten Magistrate Judge Opinions* – The remaining ten transcripts, costing $2,130.58, contain opinions recorded by the Magistrate Judge on the record in the absence of counsel.   Doyle Decl., Ex. 2.   Roxane maintains that "[t]he various recorded opinions were needed to ascertain in a timely manner the Court's ruling and reasoning on a variety of issues that were adjudicated in the case, including issues pertaining to the admissibility of evidence at trial."   [Dkt. Entry 430-2 at 5].

The opinions address various types of requested relief, such as motions to seal, motions for reconsideration and appeals, motions regarding invalidity contentions, discovery motions, a motion for sanctions, and Daubert motions.   All of these opinions are contained only in the requested transcripts and not in any written opinions entered on the docket.   The accompanying orders indicate that the Court's reasons are set forth in the opinions delivered on the record and most of the orders contain footnotes advising the parties how they can obtain the transcripts. [Dkt. Entries 120, 135, 172, 208, 263, 335].   As noted above, all of the opinions were placed on the record in the absence of counsel.   Therefore, in order to ascertain the Court's reasoning underlying its orders, counsel had to obtain the transcripts, the costs of which are minimal. The Clerk finds all of these transcripts were necessary and grants their costs.

Based upon the foregoing, the Clerk grants the entire **$2,130.58** requested cost of these 13 hearing transcripts, which, contrary to Plaintiff's assertion, did not merely serve the convenience of defense counsel.

### *Deposition Transcripts*

Roxane asks the Clerk to tax the cost of the printed transcripts of 27 depositions but not the associated videotaping charges.   The uses of the transcripts are set forth in Roxane's chart in its verified bill of costs [Dkt. Entry 430-2 at 1-4] and include:   preparation for direct and cross-examination; counter designation of deposition testimony; lodging of objections to Plaintiff's designations; ascertainment of discoverable information; cross-examination of expert witnesses at trial; preparation of its case for trial where Plaintiff noticed the deposition.

The costs of deposition transcripts are taxable under § 1920 (2) to the extent that the transcripts were "necessarily obtained for use in the case."   While our local rule, L. Civ. R.

54.1(g) (7) restricts taxation to the "fees and charges incurred in the taking and transcribing of depositions used at the trial," it is well-accepted that "[f]or the costs to be taxable, the depositions need not have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'"   Thabault v. Chait, Civ. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., Civ. No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)); Allen v. City of Chicago, Case No. 10 C 3181, 2016 WL 1070828, at *6 (N.D. Ill. Mar. 16, 2016) (determination of necessity is made based upon the facts at the time of deposition, "without regard to intervening developments that render the deposition unneeded for further use").

While Plaintiff principally takes issue with the over-inclusiveness of Roxane's request, Prometheus does contest all costs of two depositions, i.e., that of Gary Talcott ($417.90) and of Colin Howden on December 21, 2012 ($1,795.85).

Prometheus asserts that "Gary Talcott's deposition was not used at trial, nor was Mr. Talcott identified as a potential witness in the parties' Final Pre-Trial Order."   Pl.'s Br. at 7. However, Roxane has indicated that it used the transcript to prepare its case for trial and that in fact, the deposition was noticed by Prometheus.   [Dkt. Entry 328-2 at 3].   This Court has previously allowed the costs of depositions noticed by the losing party, reasoning, "Defendants' [the losing parties'] actions alone, of serving [video] deposition subpoenas, seems to mean that the [video] depositions of these witnesses were considered by Defendants to be necessary for trial." Janssen Pharm. N.V. v. Mylan Pharms., Inc., Civ. Nos. 03-6220, 03-6185, 2007 WL 925535, at *4 (D.N.J. Mar. 23, 2007).   On this basis, the Clerk allows the $262.50 cost of the copy of the transcript, to the exclusion of the remaining non-taxable costs.

12

As for the December 21, 2012 Howden deposition, Plaintiff objects to all requested costs, not because the transcript was unnecessary, but because the invoice does not separate out the taxable portions from the non-taxable portions. Pl.'s Br. at 7-8.   The Clerk believes a fair division can be made and will address these costs below with the remaining depositions, for which Plaintiff argues that reductions should be made for unnecessary services.

Roxane states that with the exception of this Howden deposition, it is not seeking the costs of realtime services.   [Dkt. Entry 430-2 at 4].   However, as observed by Plaintiff, the amounts requested by Roxane include other non-taxable costs, such as for:   exhibits not shown to be necessary; "TotalTranscript"; "Production/Archiving";[2] shipping/handling or delivery; minuscript; OCR; and keyword indexing.   Mylan Inc., 2015 WL 1931139, at *7.   The Clerk excludes such charges and taxes just the costs of the original and one copy of the transcript ("Orig. & 1") plus reporter attendance fees, or a copy of the transcript.

As for the contested Howden deposition, which occurred in New York in 2012, the Clerk determines that a fair taxable amount can be derived because the invoice indicates that the transcript copy was 313 pages in length.   The copy rate for all of the other depositions taken in New York during 2012, i.e., the Hicks, Galbiati, Gopi, Economou, Maziere, Ernst, Talcott and Boghigian depositions, was $3.50 per page.   Therefore, the Howden deposition is justly taxed at $1,095.50 (313 pp. x $3.50/p.).

---

[2]     Roxane does not explain the $45 and $40 charges for "TotalTranscript" and "Production/Archiving," respectively, which appear in the invoices of Legalink, Inc.   It seems as though "TotalTranscript" may be a file transfer system used by court reporters to transfer files electronically.   In any event, Roxane has not dispelled the Clerk's impression that these two services were not necessary and are thus non-taxable.

With all of the foregoing in mind, the following deposition transcript costs are granted:

| **Deponent** | **Taxed Amount** |
|---|---|
| **Celia Szczuka** | |
| Orig. & 1 | $ 1,003.20 |
| Reporter attendance | $ 60.00 |
| | |
| **Greg Hicks** | |
| Transcript copy | $ 966.00 |
| | |
| **Barbara Galbiati** | |
| Transcript copy | $ 665.00 |
| | |
| **Ashok Gopi** | |
| Transcript copy | $ 483.00 |
| | |
| **Julie Economou** | |
| Transcript copy | $ 1,043.50 |
| | |
| **Jean-Yves Maziere** | |
| Transcript copy | $ 336.00 |
| | |
| **Joseph Snyder** | |
| Orig. & 1 | $ 998.75 |
| Reporter attendance | $ 75.00 |
| | |
| **Allison Northcutt** | |
| Orig. & 1 | $ 1,212.20 |
| Reporter attendance | $ 90.00 |
| | |
| **Bryan Selby** | |
| Orig. & 1 | $ 535.50 |
| Reporter attendance | $ 75.00 |
| | |
| **Corrine Linskell** (GBP to USD @ 1.6024 rate) | |
| Orig. & 1 (410.70 GBP) | $ 658.11 |
| Reporter attendance (100 GBP) | $ 160.24 |
| | |
| **Pauline Page** (GBP to USD @ 1.6024 rate) | |
| Orig. & 1 (410.70 GBP) | $ 658.11 |
| Reporter attendance (100 GBP) | $ 160.24 |

| **Deponent** | | **Taxed Amount** |
|---|---|---|
| **Allan Mangel** | | |
| Orig. & 1 | $ | 1,250.20 |
| Reporter attendance | $ | 90.00 |
| | | |
| **Elizabeth Ernst** | | |
| Transcript copy | $ | 269.50 |
| | | |
| **J. Scott Young** | | |
| Orig. & 1 | $ | 817.00 |
| Reporter attendance | $ | 60.00 |
| | | |
| **Anthony Yost** | | |
| Orig. & 1 | $ | 1,547.00 |
| Reporter attendance | $ | 75.00 |
| | | |
| **Lorie Ann Morgan** | | |
| Orig. & 1 | $ | 569.50 |
| Reporter attendance | $ | 275.00 |
| | | |
| **Gary Talcott** | | |
| Transcript copy | $ | 262.50 |
| | | |
| **Colin Howden, 9/21/12**[3] | | |
| Transcript copy (332 pp. x $3.50/p.) | $ | 1,162.00 |
| | | |
| **Douglas Drossman** | | |
| Orig. & 1 | $ | 1,275.85 |
| Reporter attendance | $ | 150.00 |
| | | |
| **Anthony Lembo** | | |
| Orig. & 1 | $ | 1,052.60 |
| Reporter attendance | $ | 200.00 |
| | | |
| **Henry Boghigian** | | |
| Transcript copy | $ | 703.50 |

[3]   This transcript copy was charged at the "expedited" rate of $5.20 per page, for a total of $1,726.40, but Roxane has not justified the need for expedited service and therefore, the Clerk taxes this copy at the going New York ordinary rate of $3.50 per page.

15

| **Deponent** | | **Taxed Amount** |
|---|---|---|
| **Susan Lucak** | | |
| Orig. & 1 | $ | 1,318.60 |
| Reporter attendance | $ | 60.00 |
| | | |
| **Rajendra Kankan** (EU to USD @ 1.299 rate) | | |
| Transcript copy (851.5 EU) | $ | 1,106.10 |
| | | |
| **Schrinivas Purandare** (EU to USD @ 1.299 rate) | | |
| Transcript copy (442 EU) | $ | 574.16 |
| | | |
| **Manjinder Singh** (EU to USD @ 1.299 rate) | | |
| Transcript copy (419.25 EU) | $ | 544.61 |
| | | |
| **Henry Grabowski** | | |
| Orig. & 1 | $ | 1,383.20 |
| Reporter attendance | $ | 90.00 |
| | | |
| **Colin Howden, 12/21/12** | | |
| Transcript copy (313 pp. x $3.50/p.) | $ | 1,095.50 |
| | | |
| **Total:** | | **$ 25,111.67** |

Combining the granted costs of trial ($3,596.23), hearing ($2,130.58) and deposition

($ 25,111.67) transcripts, printed transcripts are taxed in the total amount of **$30,838.48**

pursuant to § 1920 (2).

**III.     Witness Fees, § 1920 (3)**

Pursuant to § 1920 (3), Roxane seeks fees for two deposition and trial witnesses, Colin

Howden and Harry Boghigian.   The fees total $5,684.48 and are substantiated by submitted

receipts.   Doyle Decl., Ex. 6.   Plaintiff does not contest these requested fees.

Our local court rule governing the fees of trial witnesses incorporates by reference

28 U.S.C. § 1821, which controls allowable witness fees:

> (1) The fees of witnesses for actual and proper attendance shall be allowed,
> whether such attendance was voluntary or procured by subpoena. The rates

16

for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).   Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District.   Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (1).

L. Civ. R. 54.1(g) (7) further provides that "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial.(See L. Civ. R. 54.1(g )(1).)"

Section 1821 of Title 28 provides for the payment of witnesses' fees and allowances for their attendance in federal court.   28 U.S.C. § 1821(a) (1).   Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance."   Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees and tolls. Subsection (d) allows a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance.   GSA rates for lodging and for meals and incidental expenses ("M & IE"), including travel day M & IE (taxed at 75% of full day M & IE), can be found at www.gsa.gov/portal/category/100120.

Roxane asks for witness fees arising out of two depositions by Colin Howden, on September 21 and December 21, 2012, in Chicago, near his home.   The requested cost of **$98.00**, covering two days of attendance fees (2 days x $40/day) and $18.00 taxicab fare, is proper.

17

Dr. Howden also had to make two trips to Newark to testify at trial because the first trial date was cancelled due to inclement weather.   For each trip, Roxane asks for coach airfare ($1,190.00), one day of attendance fees ($40.00), one night of lodging ($132.00) and one day of M & IE ($61.00) at the applicable GSA rates for Newark in February 2014, in addition to two taxicab fares totaling $78.00.   The sum is $2,924.00.   Coming a distance from O'Hare Airport, Dr. Howden's trips entailed at least one travel day, in addition to his day of trial testimony.   Thus, because § 1821 allows attendance fees and subsistence for required travel days at the travel day M & IE rates, the Clerk finds it appropriate to grant an additional day of attendance fees and a travel day of M & IE for each of the two trips, or $80.00 (2 x $40.00) plus $91.50 (2 x $45.75). Fees for this witness' trial appearance amount to **$3,095.50** ($2,924.00 + $80.00 + $91.50).

Harry Boghigian traveled from his Florida home for his October 10, 2012 deposition in New York City.   The requested attendance fee ($40.00), airfare ($854.60), taxicab fares (92.88), one night of lodging ($295.000) and one day of M & IE ($71.00) at the applicable GSA rates are taxable.   However, as with Dr. Howden, this witness' long-distance trip entailed at least one travel day, so the Clerk deems it appropriate to award an additional day of attendance fees ($40.00) and one travel day of M & IE at the rate of $53.25.   Accordingly, fees for Mr. Boghigian's deposition are granted in the requested amount of $1,353.48 plus $93.25 or **$1,446.73**.

The final witness fees sought are those in connection with Mr. Boghigian's trial appearance on February 11, 2014.   For this long-distance trip, the Clerk grants two days' attendance fees ($80.00), airfare ($966.00), taxi fares ($110.00), one night's lodging ($132.00), one day of M & IE ($61.00) and one travel day M & IE ($45.75) or a total of **$1,394.75**.

18

Under § 1920 (3), witness fees are taxed in the combined amount of **$6,034.98** ($98.00 + $3,095.50 + $1,446.73 + $1,394.75).

### IV.    Fees for Exemplification and the Costs of Making Copies, § 1920 (4)

Roxane asks for various types of costs under the § 1920 (4) category of "[f]ees for exemplification and the costs of making copies":   TransPerfect's charges for photocopying exhibits and trial materials and the preparation of witness binders ($17,929.45); UnitedLex's charges in connections with electronically stored information ("ESI"); hyperlinking of Roxane's Proposed Findings of Fact and Conclusions of Law ($1,392.00); and DecisionQuest's charges for the preparation of demonstratives used at trial ($23,977.00).   The combined total is $51,403.45.   If taxable, the first two types of charges would fall under the rubric of "the costs of making copies," and the latter two would be encompassed within "fees for exemplification."

Prometheus' position is that "the costs of making copies," i.e., those of photocopying and ESI, should be reduced to eliminate the charges for non-taxable items, and that the "fees for exemplification," i.e., the costs of hyperlinking and the creation of demonstratives, should be denied in their entirety.   Pl.'s Br. at 8-11.

*Photocopies/TransPerfect Legal Solutions Charges*

Roxane asks the Clerk to tax "$17,929.45 in costs for copying of documents for use in the courtroom at trial" which it describes as "necessary for the efficient presentation of the case." Def.'s Br. at 7.   Two TransPerfect Legal Solutions invoices cover the costs of copying trial exhibits and bench books.   Doyle Decl., Ex. 9.

Under § 1920 (4), the cost of copies may be taxed to the extent that the copies were "necessarily obtained for use in the case."   The test of subsection (4) is satisfied if the copies

19

were required to be filed with the court or provided to opposing counsel. Copies may have been necessarily obtained under other circumstances as well, such as to prepare one's defense in the case.   Conversely, general copying costs are not recoverable and neither are the costs of copies obtained merely for the convenience of counsel.   As the prevailing party knows the purpose of its copies, it must demonstrate that the copies were necessarily obtained for a reimbursable use in the case.   See, e.g., Awwad v. Largo Medical Center, Inc., No. 8:11-cv-1638-T-24 TBM, 2013 WL 6198856, at *5 (S.D. Fla. Nov. 27, 2013) (stating generally accepted principles governing the taxation of the cost of copies).

Plaintiff does not contest the necessity of these photocopies and indeed, the Court's Trial Management Order [Dkt. Entry 280] specified that the parties were to submit to the Court two copies of a joint bench book and two copies of the parties' exhibit lists and exhibit books, with one copy to the opposing party.   While the number of pages is voluminous, Prometheus does not take issue with the number of copies and the Clerk notes the volume of the parties' exhibits in the Final Pretrial Order, 272 in number for Plaintiff and 332 for Defendants   [Dkt. Entry 385 at 53-111].   Nor does Plaintiff contest the rates charged of $.08 and $.75 per page for black and white and for color copies, respectively, which the Clerk finds reasonable.

Prometheus does maintain, however, that the taxed amount should be reduced to $13,599.25, due to Roxane's inclusion of non-taxable items, such as binders, custom tabs and labels, coil binding, file folders, redwelds and plastic sleeves.   Pl.'s Br. at 9-10.   These items total $4,330.50, after correcting for a $.30 file folder omitted in Plaintiff's calculations.

Indeed, the Clerk consistently denies such costs as being akin to attorney overhead. See e.g., Warner Chilcott Labs. Ireland Ltd. v. Impax Labs., Inc., Civ. Nos. 08-6304, 09-2073,

20

09-1233, 2013 WL 1876441, at *12 (D.N.J. Apr. 18, 2013) citing Yong Fang Lin v. Tsuru of Bernards, LLC, Civ. No. 10–2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011); Laura P. v. Haverford School Dist., Civ. No. 07–5395, 2009 WL 1651286, at *9 n.10 (E.D.Pa. June 12, 2009); Close–Up Int'l, Inc. v. Berov, Civ. No. 02–CV–2363, 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007).   Therefore, these items are not taxed here.

The remaining amounts charged for copying alone add up to $12,137.18, and combined with the 8.875% New York City sales and use tax, or $1,077.17 ($12,137.18 x .08875), these photocopies are taxed in the total amount of **$13,214.35**.   This figure approximates the reduced amount proposed by Plaintiff of $13,599.25, decreased by the tax of $384.33 on the $4,330.50 of deducted items.

*ESI/UnitedLex Charges*

Roxane also seeks the $8,105.00 cost of ESI as a § 1920 (4) "cost of making copies." Doyle Decl., Ex. 10.   It describes these UnitedLex charges as the cost of "scanning, making in TIFF format, and making in OCR (optical character recognition) format documents produced during discovery in this case."   Def.'s Br. at 8.   Roxane points out that "[t]he parties agreed that documents [would] be produced in a single page TIFF format with summation load files and as OCR'ed."   Doyle Decl., Ex. 11.   Roxane apparently contends that the costs of OCR should be taxed because of the parties' agreement.   This is not so.

The taxation of ESI in this Circuit is governed by the infamous case of Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158 (3d Cir. 2012).   As here, the parties agreed in that case to produce ESI in Tagged Image File Format ("TIFF"), an image format whereby ESI is converted into a non-editable digital file, allowing for the endorsing of pages and confidentiality

21

branding.   The case management order required the Bates numbering of each page and proper unitization of the documents, the production of metadata fields, and an extracted text file or searchable version of every electronic document in a document level text file.   674 F.3d at 161.

The services performed by third-party electronic discovery vendors, of which costs were sought, consisted of "(1) preservation and collection of ESI; (2) processing the collected ESI; (3) keyword searching; (4) culling privileged material; (5) scanning and TIFF conversion; (6) optical character recognition ('OCR') conversion; and (7) conversion of racing videos from VHS format to DVD format."   Id. at 161-62.

The Third Circuit first determined that the vendors' services did not constitute "exemplification," as set forth in § 1920 (4), and then addressed which charges fell under the other category of § 1920 (4), "the cost of making copies."   Adopting a narrow reading of the statute, pursuant to the legislative history and directive of the Supreme Court in the Crawford Fitting case, it found that only the costs incurred for the physical preparation of ESI were taxable. It observed that in the pre-digital era, none of the various steps which preceded the actual copying of documents, such as locating paper files, would have been taxed:

> It may be that extensive "processing" of ESI is essential to make a comprehensive
> and intelligible production.   Hard drives may need to be imaged, the imaged drives
> may need to be searched to identify relevant files, relevant files may need to be screened
> for privileged or otherwise protected information, file formats may need to be converted,
> and ultimately files may need to be transferred to different media for production.   But
> that does not mean that the services leading up to the actual production constitute
> "making copies."

Id. at 169.   The court reasoned, "that is because Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations.   It allowed only for the taxation of the costs of making copies."   Id.   The court concluded that of the many services performed, only the

costs of scanning hard copy documents, converting native files to the agreed-upon format, and transferring VHS tapes to DVD format were taxable.   Id. at 171.   The costs of other services required under the case management order were not taxed.

Subsequent to the Third Circuit's decision, two other circuit courts, the Fourth and Federal Circuit (applying Eleventh Circuit law) ruled on similar issues.    First, the Fourth Circuit issued an opinion faithful to the Race Tires holding, finding the Third Circuit's reasoning "persuasive." Country Vintner of N. Carolina v. E. & J. Gallo Winery, Inc., 718 F.3d 249 (4th Cir. 2013).   The Fourth Circuit granted only $218.59 of the $111,047.75 requested discovery costs, taxing just the costs of converting native files to TIFF and PDF formats and transferring files onto CDs.   In doing so, it denied the costs of OCR, in addition to the costs of:   flattening and indexing ESI; indexing data; removing system files; extracting metadata; unitizing electronic documents by locating breaks to facilitate reviewing, searching and production; creating an index of metadata; exporting and loading electronic documents and metadata onto a platform; Bates labeling; and managing the processing of ESI/quality control and preparing documents to produce to opposing counsel.   Id. at 252-53.

The Federal Circuit's decision followed in the case of CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320 (Fed. Cir. 2013).   There, the Federal Circuit went further than the Third and Fourth Circuits in finding that the costs of additional activities necessary to discharge discovery obligations were taxable.   Applying relevant Eleventh Circuit law, it held that "recoverable costs under section 1920 (4) are those costs necessary to duplicate an electronic document in as faithful and complete a manner as required by rule, by court order, by agreement of the parties, or otherwise." Id. at 1328.   It apparently did not share the Third Circuit's view that

"Congress did not authorize taxation of charges necessarily incurred to discharge discovery obligations." Race Tires, 674 F.3d at 169.   The Federal Circuit noted its divergence from the Third and Fourth Circuits when it taxed the costs of the initial stage of imaging source media and extracting documents in a way that preserves metadata, in addition to the costs taxed by its sister circuits.   737 F.3d at 1333.

After noting its allegiance to the Race Tires holding, the Northern District of Illinois lately denied the costs of OCR, regardless of the parties' stipulation, because making documents readable is not tantamount to making them searchable through OCR.   Intercont'l Great Brands LLC v. Kellogg N. Am. Co., Case No. 13 C 321, 2016 WL 316865, at *6 (N.D.Ill. Jan. 26, 2016) quoting Life Plans, Inc. v. Sec. Life of Denver Ins. Co., 52 F. Supp. 3d 893, 903 (N.D.Ill. 2014) ("[a]lthough converting files to TIFF format is the equivalent of 'making copies' under section 1920(4), making a document searchable 'is the equivalent of work counsel would perform in the absence of OCR.'").   See also Amana Soc'y, Inc. v. Excel Eng'g, Inc., No. 10-CV-168, 2013 WL 427394, at *6 (N.D.Iowa Feb. 4, 2013) (following Race Tires and holding that "Bates match, OCR and document unitization are used to organize documents and make them searchable, activities that would traditionally be done by attorneys or support staff, and therefore are not taxable").

Therefore, contrary to Roxane's assertion, the costs of OCR are not taxable in the Third Circuit, even if the parties had agreed that document production would include OCR.   Bound by the Country Vintner decision which adopted the Race Tires holding, a district court in the Fourth Circuit very recently stated, "[t]he Court finds that the parties' stipulation regarding the production of ESI cannot make ESI-related costs 'necessary,' in accordance with Section 1920(4), unless the costs are copying costs."   RG Steel Sparrows Point, LLC v. Kinder Morgan Bulk Terminals, Inc.,

24

Civ. No. WMN 09-1668, 2016 WL 1377405, at *7 (D.Md. Apr. 7, 2016).   Because the court there could not discern whether any of the requested ESI costs could be attributed to copying, it found that the prevailing party had not met its burden and denied all ESI costs.

Similarly, none of the charges in the format submitted by Roxane are taxable under the Race Tires holding.   Many different types of services are described in the UnitedLex invoices and those which might appear to be taxable, e.g., "begin imaging documents," and "imaged," are not separated out from other non-taxable services.   Examples are:  1) 3/22/2012 "Review document production request; isolate documents to be produced; set up Production specifications and begin imaging documents" - 1.5 hrs; 2) 4/02/2012 "Imported prometheus docs, Imaged, ocr'ed and coded records" - .5 hrs; and 3) 6/12/2012 "Imported production volume GSK004.   Imaged and ocr'ed imported data in an effort to make it searchable" - .5 hrs.

Prometheus asserts that only one entry on the invoices is taxable, that of 12/28/2011 charged at $75:   "Add tiff images of natively redacted xls files."   However, the Clerk cannot find that adding TIFF images is the equivalent of converting native files to TIFF.   Other entries regarding TIFF, e.g., 3/21/2012 "Tiff documents per G. Rosner's request," - .2 hrs., are similarly too vague for the Clerk to find their costs taxable under Race Tires.

Furthermore, even UnitedLex's activities of "imaging," without further explanation, are not taxable under Race Tires.   The costs of imaging hard drives are not taxable under that decision.   The Third Circuit recently revisited ESI costs in the case of Camesi v. Univ. of Pittsburgh Med. Ctr., No. 15-1865, 2016 WL 1085507 (3d Cir. Mar. 18, 2016).   Little was added to the bones of the Race Tires decision because the court found that the ESI services of "Process to Ontrack Inview" were not explained sufficiently to determine their taxability under Race Tires

and therefore, remand to the district court was necessary for the possible taking of additional evidence.   However, the circuit court reaffirmed its narrow construction of § 1920 (4) in Race Tires and noted its finding in that case that "while imaging hard drives, which is a form of copying from one electronic source to another to allow for searching and reviewing, is part of the '"processing" of ESI . . . essential to make a comprehensive and intelligible production,' it does not constitute 'making copies' for the purposes of § 1920 (4)."   Id. at *6, quoting Race Tires, 674 F.3d at 169, 171 n.11.

The Third Circuit further clarified that "[e]ven the term 'scanning,' as used in *Race Tires*, applied only to the 'scanning of *hard copy* documents' as 'making copies' for the requesting party. 674 F.3d at 171 (emphasis added).    This is not necessarily the same as 'scanning . . . [prevailing party's] *electronic* documents' . . . for the benefit of the responding party, rather than to produce to the requesting party."   Id. at *7.   Nothing in the record there showed that the services were performed in order to create a readable format for the losing parties, rather than for the prevailing parties' own review and benefit.

The same is true in this case.   The UnitedLex invoices do not clearly show any services performed to create a readable format for Prometheus.   Roxane describes the UnitedLex charges as being for "scanning, making in TIFF format, and making in OCR (optical character recognition) format documents produced during discovery in this case," Def.'s Br. at 8, but OCR charges are not taxable and there are no entries in the UnitedLex invoices for scanning hard copy documents or converting native files to TIFF format.   Furthermore, it is not clear from the invoices that the services were conducted for the benefit of Prometheus, as opposed to Roxane's own benefit. Accordingly, the Clerk denies all ESI costs.

*Hyperlinking/Brief-Lynx Charges*

Roxane asks for reimbursement of Brief-Lynx's $1,392.00 charge for "hyperlinking annotations to the record and law in the Post-Trial Proposed Findings of Fact and Conclusions of Law" as a § 1920 (4) fee for exemplification. [Dkt. Entry 430-2 at 8]; Doyle Decl., Ex. 8. Roxane cites no authority supporting this request, and instead explains that the hyperlinking was done for the convenience of the Court.   Def.'s Br. at 7.

Because the issue was not before it, the Third Circuit did not define the parameters of "fees for exemplification" in Race Tires and it has not done so elsewhere.   However, in the above-mentioned RG Steel Sparrows Point case, the District of Maryland rejected the same argument proffered by the prevailing party there, i.e., that the electronic brief containing proposed findings of fact and conclusions of law, which was hyperlinked to evidence, testimony and case law, should be taxed because it assisted the court. 2016 WL 1377405, at *4-5.   Taxation of the cost of hyperlinking was also denied in case law cited by Prometheus. In re Omeprazole Patent Litig., MDL Dkt. No. 1291, 2012 WL 5427849, at *9 (S.D.N.Y. Nov. 7, 2012) ("[w]ith regard to the requested costs related to production of the hyperlinked post-trial findings of fact and conclusions of law, those costs fall squarely within the category of attorneys' fees, which are not taxable"); see also Osorio v. Dole Food Co., No. 07-22693, 2010 WL 3212065, at *7 (S.D.Fl. July 7, 2010), report and recomm. adopted, 2010 WL 3212062 (S.D.Fl. Aug. 12, 2010) (finding that the costs of ebriefs and hyperlinking are not taxable under § 1920 (4) as the costs of making copies or fees for exemplification).

On the other hand, one district court allowed the costs of hyperlinking, stating, "[i]t is this court's opinion that any functional enhancements, such as hyperlinking, that normally accompany

27

a *digital copy* of an administrative record are an integral part of the process of *copying* and are thus recoverable under section 1920 (4)."   Sequoia Forestkeeper v. Elliot, No. 1:13–cv–1721, 2015 WL 5179069, at *1 (E.D.Cal. Sept. 4, 2015).   Given the Third Circuit's very narrow application of § 1920 (4), as fully discussed above, the Clerk is confident that that court would not tax "functional enhancements" of digital or electronic copies.

In light of the restrictive stance taken by the Third Circuit in Race Tires and by the Supreme Court in Crawford Fitting and later, in Taniguchi, the Clerk finds it prudent to adopt that line of case law denying the cost of hyperlinking.   This requested cost is disallowed.

*Trial Demonstratives/DecisionQuest Charges*

The final costs sought by Roxane under § 1920 (4) are DecisionQuest's charges in the amount of $23,977.00 for the preparation of demonstratives used at trial.   [Dkt. Entry 430-2 at 8]; Doyle Decl., Ex. 7.   In support, Roxane cites this Court's Thabault decision, rendered long before Taniguchi and Race Tires, for the proposition that "[d]emonstratives and other visual aids used at trial are properly included in the category of 'exemplification,' for which cost recovery is allowed under 28 U.S.C. § 1920(4)."   Def.'s Br. at 6.   Roxane explains, "[t]he demonstratives prepared by DecisionQuest were used in Roxane's opening statement, and with each of Roxane's witnesses, and included sophisticated graphics to illustrate and explain some of the complex scientific and medical issues in the case."   Id. at 6-7.

The entries on the DecisionQuest invoices consist of:   "Computer graphic design & layout;" "template development;" "Proofing, trafficking, shipping, Template design;" "Project coordination, Edits;" "Proofing;" "Callouts;" "Howden separate show reformatting;" "callout slides;" "Figure art;" "On-site computer graphic design & layout;" "Graphics support, Newark,

Opening, Howden, Boghigian, Lembo cross, PPT, Illustration."   Doyle Decl., Ex. 7.   These

"Professional Consulting Fees" were billed at rates ranging from $105 to $175 per hour.   Id.

Plaintiff asserts that all such costs should be denied, under the Clerk's prior Warner

Chilcott decision, 2013 WL 1876441, at *16-17, because they "reflect non-taxable intellectual

efforts with respect to those demonstratives."   Pl.'s Br. at 8.   Prometheus further contends that

the requested costs are not taxable under L. Civ. R. 54.1(g)(10) because they are neither reasonable

nor were they admitted into evidence.   Id. at 9.   Further, that local rule advises that a court order

be obtained prior to incurring the expense of the preparation of visuals.   Id.

In the Warner Chilcott case cited by Plaintiff, the Clerk noted the Third Circuit's silence

on the issue and explored at length two different meanings attributed to "fees for exemplification"

by various circuit courts.   The Clerk also explained his rationale for drawing a dichotomy

between the costs of intellectual efforts and those of physically preparing demonstratives and for

denying all costs of "graphic design and consultant."   2013 WL 1876441, at *13-17.   See

also Mylan Inc. v. SmithKline Beecham Corp., Civ. No. 10-4809, 2015 WL 1931139, at *15-16

(D.N.J. Apr. 28, 2015) and cases cited therein.   This analysis will not be reiterated here.

Since the Clerk's decisions, other district courts have likewise denied the costs of

preparing demonstrative exhibits.   Citing the Race Tires case, another district court in the Third

Circuit disallowed such costs, stating that "[v]isual aids used in counsel's arguments and in the

testimony of expert witnesses are not taxable.   Id.   (citation omitted).   Nor are the costs for

preparation of exhibits and demonstrative aids."   Alzheimer's Inst. of Am., Inc. v. Avid

RadioPharms., Civ. No. 10-6908, 2016 WL 1161349, at *1-2 (E.D.Pa. Mar. 23, 2016).

Denial of such costs by the Southern District of New York occurred just one month prior. Broadspring, Inc. v. Congoo, LLC, No. 13-cv-1866, 2016 WL 817449, at *5-6 (S.D.N.Y. Feb. 24, 2016), appeal docketed, No. 16-923 (2d Cir. Mar. 25, 2016).   That court's reasoning echoed the Clerk's earlier analysis.   In the Taniguchi case, the Supreme Court emphasized the "modest" and "narrow scope of taxable costs" under § 1920, 132 S. Ct. at 2006, and noted that "expenses for experts and consultants are generally not taxable as costs," id. at n.8.

Some courts have skirted the task of defining "fees for exemplification," choosing neither the narrow Black's Law Dictionary meaning, nor the broader, ordinary meaning of "act of illustration by example."   Instead, they have reasoned that in any event, under § 1920 (4), the prevailing party must still show that the exemplification was "necessarily obtained" and that demonstratives which are merely illustrative of expert testimony or serve mainly to illustrate counsel's argument are unnecessary.   See e.g., Jo Ann Howard & Assocs., P.C. v. J. Douglas Cassity, Case No. 4:09CV01252, 2015 WL 7422199, at *10 (E.D.Mo. Nov. 20, 2015).

Even setting aside the thorny burden of separating intellectual efforts from physical preparation, the Clerk determines that he must deny all of the "Professional Consulting Fees" requested here, in the absence of Third Circuit precedent compelling a different result.   As in case law cited above, the demonstratives were used in defense counsel's opening statement and with Roxane's witnesses.   They are the fees of consultants, the taxation of which has been eschewed by the Supreme Court, which have not been shown to be necessary.   All such costs are denied.

Under § 1920 (4), the Clerk taxes just the **$13,214.35** cost of photocopies.

## V.  **Appellate Costs under the Mandate, Fed. R. App. P. 39(d)**

Roxane asks the Clerk to tax the $550.40 cost of appellate briefing taxed by the Federal Circuit against appellant Prometheus under Fed. R. App. P. 39(d), as ordered in the mandate. [Dkt. Entry 429].   Plaintiff does not object to this cost.

As entered on the docket on January 7, 2016, our L. Civ. R. 79.4 provides that "[i]n the event that the mandate or judgment provides for costs . . . , the prevailing party shall submit an order implementing the mandate or judgment."   Accordingly, the Clerk shall add this cost to the others granted above.

## VI.  **Summary**

In sum, the Clerk taxes the following costs in favor of Defendant and against Plaintiff:

| | |
|---|---|
| Fees for transcripts, § 1920 (2): | $30,838.48 |
| Fees for witnesses, § 1920 (3): | $  6,034.98 |
| Fees for exemplification and copies, § 1920 (4): | $13,214.35 |
| Appellate costs, Fed. R. App. P. 39(d): | $    550.40 |
| **TOTAL:** | **$50,638.21** |

For the above reasons, the motion of Defendant Roxane Laboratories, Inc. to tax costs against Plaintiff Prometheus Laboratories, Inc. is hereby **GRANTED IN PART AND DENIED IN PART.**   An appropriate order follows.

WILLIAM T. WALSH, CLERK

By:   S/John T. O'Brien
        Deputy Clerk

Date:   April 18, 2016

31